IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jodas Etienne, | : | |
| | : | Case No. 1:26-cv-926 |
| Petitioner, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order |
| Matthew Putra, U.S. Immigration and Customs Enforcement, Director of Detroit Field Office, Enforcement and Removal Operations, *et al.*, | : | |

Respondents.

Petitioner Jodas Etienne brings this Petition for a Writ of Habeas Corpus ("Habeas Petition") under 28 U.S.C. § 2241. (Doc. 1.) Etienne asserts that he is being unlawfully held and denied a constitutionally-adequate custody redetermination hearing—a bond hearing—in violation of the Due Process Clause of the United States Constitution. Respondents filed a Return of Writ opposing Etienne's right to a bond hearing, to which Etienne filed a Reply. (Docs. 8, 9.)[1] The Court will **GRANT** the Habeas Petition because Etienne, who was detained after entering the United States, released and paroled, and then re-detained later, is entitled to a bond hearing under 8 U.S.C. § 1226(a) and the Due Process Clause.

## I. BACKGROUND

### A. Immigration Proceedings

Etienne is a native and citizen of Haiti who has been residing in the United States since 2023 and is currently detained at the Butler County Jail. (Doc. 1 at PageID 5.) Etienne asserts that he came to the United States after fleeing gang violence in his home country. (*Id*. at PageID

[1] Respondents are Matthew Putra, the acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office; David J. Venturella, the Director of Immigration and Customs Enforcement; Markwayne Mullin, the Secretary of the U.S. Department of Homeland Security; and Todd Blanche, the Attorney General of the United States.

11; Doc. 1-4 at PageID 43–44.)

On April 9, 2023, Etienne entered the United States at the San Ysidro, California port of entry seeking admission and asylum, where he was inspected, found to be deportable and inadmissible, and released on parole. (Doc. 1 at PageID 5, 11; Doc. 1-3, PageID 25; I-213, Doc. 8-1[2].) The Department of Homeland Security ("DHS") placed Etienne into removal proceedings under Section 240 of the Immigration and Nationality Act ("INA") by issuing him a Form I-862, Notice to Appear ("NTA") that designated him as an arriving alien who had applied for admission into the United States. (Doc. 1-3.) Etienne was placed on parole under Section 212(d)(5) of the INA until April 7, 2024, at which time his parole expired. (I-94, Doc. 1-2.)

On July 14, 2023, Etienne applied for an I-765 Application for Employment Authorization, which was approved on October 6, 2023. (Doc. 8-1 at PageID 144.) He applied again on July 9, 2024, and the request was approved on August 1, 2024. (*Id.*) In May 2024, Etienne's removal proceedings were transferred from Orlando Immigration Court to Cleveland Immigration Court after Etienne moved to Ohio. (Doc. 1 at PageID 12; Order Changing Venue, Doc. 8-2.) On October 2, 2024, Etienne applied for an I-821 Application for Temporary Protected Status, which is still pending. (Doc. 8-1 at PageID 144.)

On April 1, 2026, Immigration Judge Monte Horton issued a Finding of Removability and Scheduling Order finding Etienne to be removable and identifying Haiti as the country of removal. (Doc. 8-4.) On August 1, 2026, Etienne was taken into ICE custody. (Doc. 1 a PageID 12.)

Up until the time of his arrest, Etienne leased a home in Springfield, Ohio, paid his gas and electric bills, and maintained steady employment. (Doc. 1 at PageID 12.) He has been

---

[2] Respondents mistakenly cite to "I-213, Exhibit A, at 1-2" for Etienne's I-213 record. (*See* Doc. 8 at PageID 132.) This document is actually filed as Document 8-1, PageID 142–44.)

working at KTH Parts Industries, Inc., on an assembly line, assembling car parts for companies like Honda. (*Id.*) Etienne was also active with his church, where he was a volunteer. (*Id.*)

Etienne has a history of traffic offenses from 2025 and 2026. (Doc. 1 at PageID 12; *see* Doc. 8-1.) He explains in his Petition that he struggled to obtain a permanent driver's license due to lack of available driving classes in Haitian Creole. (*Id.*) On April 20, 2026, Etienne pled guilty to a charge of driving without an operator's license in the Municipal Court of Clark County, Ohio, and he was ordered to obtain a permanent driver's license within 97 days or serve a sentence of five days in jail. (Doc. 1 at PageID 13.) He applied for asylum and withholding of removal on May 1, 2026.[3] (Doc. 1-4 at PageID 39, 41, 45.) Etienne was able to find and complete a driving class, but was unable to obtain his permanent license within 97 days, and on July 27, 2026, served a five-day jail sentence. (Doc. 1 at PageID 13.) At the completion of his five-day jail sentence, Etienne was re-arrested by ICE and detained at the Butler County Jail, where he remains in custody. (*Id.*)

Etienne asserts that he was not provided an opportunity to challenge his custody with DHS. (*Id.*) On September 1, 2026, Etienne filed a Motion for Custody Redetermination in the Cleveland Immigration Court. (*Id.*) He appeared with counsel virtually via WebEx at a bond hearing before an Immigration Judge on September 9, 2026. (*Id.*) Immigration Judge Richard Drucker denied the request for a custody redetermination proceeding, marking as the reason: "No jurisdiction." (Doc. 1-10 at PageID 61–62.) Etienne asserts that the Immigration Judge declined to hear facts that would demonstrate his lack of dangerousness and lack of flight risk and merit him a reasonable bond. (Doc. 1 at PageID 14.)

[3] Although Etienne's Petition asserts that he applied for asylum within one year of entering the United States, the Application for Asylum and for Withholding of Removal, Form I-589, attached to his Petition is dated May 1, 2026. (*Compare* Doc. 1 at PageID 12 *with* Doc. 1-4 at PageID 39, 41, 45.)

### B. Procedural Posture

Etienne filed his Habeas Petition in this Court on September 14, 2026. (Doc. 1.) Etienne alleges that his detention is unlawful and that he is entitled to release or a custody redetermination hearing—a bond hearing—under the Due Process Clause of the Fifth Amendment.[4] (*Id.* at PageID 14–16.) Respondents oppose the Habeas Petition and contend that Etienne is subject to mandatory detention under the INA, 8 U.S.C. § 1225(b)(2)(A), as an arriving alien and an applicant for admission seeking admission to the United States at a port of entry. (Doc. 8.)

## II. LAW AND ANALYSIS

### A. Mandatory Detention under the INA

Respondents argue that a non-citizen who is detained at the border, but then paroled and released under 8 U.S.C. § 1182(d)(5), is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) at the conclusion of his parole. (Doc. 8 at PageID 134–37.) The Sixth Circuit has explained generally when mandatory detention under § 1225 applies:

> Under 8 U.S.C. § 1225, a noncitizen "present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides in part that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§ 1229a]." *Id.* § 1225(b)(2)(A). "The plain meaning of [§ 1225(b)(2)(A)] is that detention must continue ... until removal proceedings have concluded." *Jennings [v. Rodriguez]*, 583 U.S. [281,] 299, 138 S.Ct. 830 [(2018)]. Noncitizens who fall under § 1225(b)(2)(A)'s ambit must be detained, subject to very narrow exceptions inapplicable to this appeal. *See* 8 U.S.C. § 1225(b)(2)(B).

*Lopez-Campos v. Raycraft*, 175 F.4th 713, 721 (6th Cir. 2026) (emphasis added), *petition for*

[4] Etienne also asserts that Respondents violated the Administrative Procedure Act by designating him as an arriving alien and detaining him pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. 1 at PageID 16.) The Court will not address the Administrative Procedure Act argument as relief is warranted on due process grounds.

*cert. docketed*, *Raycraft v. Lopez-Campos*, No. 25-1415 (U.S. June 24, 2026).

An exception to mandatory detention allows DHS to parole certain detainees for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Such parole "shall not be regarded as an admission of the alien" and "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Respondents contend that under this provision, Etienne's status reverted to that of an arriving alien seeking admission under § 1225(b)(2)(A) at the conclusion of his parole.

The Court disagrees. The Court is persuaded that Etienne's detention is governed by 8 U.S.C. § 1226(a)—not § 1225(b)(2)(A)—and that he is entitled to a bond hearing. Section 1226(a) provides that "an alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Court rejects Respondents' contention that DHS has authority to detain Etienne for the duration of his removal proceedings without a bond hearing under § 1225(b)(2)(A) even after releasing him on parole. Section 1225(b)(2)(A) requires mandatory detention for aliens who are both "applicants for admission" and "seeking admission." The terms "applicant for admission" and "seeking admission" do not have the same meaning. *Lopez-Campos*, 175 F.4th at 723. To be seeking admission, "the noncitizen must actively be in search of *lawful entry into the United States* via inspection and authorization by an immigration officer." *Id.* (emphasis added); *see also Methelus v. Mullin*, No. CV 26-158-DLB, 2026 WL 1505792, at *5 (E.D. Ky. May 29, 2026) ("This Court and numerous other district courts have found that the expiration of parole

does not return the undocumented immigrant to the status of an 'arriving alien' at the threshold of the United States.")

A noncitizen who has been paroled into the country and who has lived in the country for years is not seeking admission—not seeking lawful *entry* into the country—as required by § 1225(b)(2)(A). *See Munoz Soto v. Raycraft*, 834 F.Supp.3d 767, 771 (S.D. Ohio 2026) ("Because Petitioner was inspected at the border and paroled into the interior of the country, he cannot now be an 'arriving alien' who is 'seeking admission,' such that he must be subjected to mandatory detention under Respondents' interpretation of § 1225(b)."); *Araque-Marquez v. Olson*, No. CV 26-84-DLB, 2026 WL 836121, at *6 (E.D. Ky. Mar. 26, 2026) (stating that an alien cannot seek lawful entry when he already is in the country and that seeking lawful status is not the same as seeking lawful admission); *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *2–3 (W.D. Ky. Mar. 3, 2026) (holding that an alien whose parole has expired is neither an "arriving alien" nor an alien "seeking admission"). Rather, § 1226(a) applies to aliens already present in the United States, including parolees like Etienne. *See Mulet-Zaldivar v. Acting Dir. of Enf't & Removal Operations, Detroit Field Off., Immigr. & Customs Enf't*, No. 1:26-CV-00143, — F.Supp.3d —, 2026 WL 1911462, at *1 (S.D. Ohio July 2, 2026); *Araque-Marquez*, 2026 WL 836121, at *9; *Quintero*, 2026 WL 596643, at *2–3. Etienne, therefore, is entitled to a bond hearing under § 1226(a).

The regulation relied upon by Respondents, 8 C.F.R. § 1.2, does not change that result. That regulation states in relevant part that "[a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, [and] . . . [a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2; *see also* 8 C.F.R. § 1001.1(q)

(substantially the same). "Courts must exercise their independent judgment" when interpreting statutes and should not blindly defer to agency interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–a13 (2024). The parole statute provides that upon completion of parole, the immigrant's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission to the United States*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Treating the noncitizen as an applicant for admission to the United States does not require treating him as an arriving alien seeking entry into the United States at a port of entry under § 1225(b)(2)(A). This Court agrees with other district courts in the Sixth Circuit that have declined to interpret or apply 8 C.F.R. § 1.2 as requiring a paroled alien to be treated as an arriving alien subject to mandatory detention under § 1225. *See*, *e.g.*, *Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("[T]he Court rejects the government's argument that an arriving immigrant who is paroled and whose parole expires remains an arriving immigrant even when that term no longer logically applies to them."); *Montiel v. Raycraft*, No. 1:25-CV-1610, 2026 WL 32076, at *3 (W.D. Mich. Jan. 6, 2026) (holding that an alien who arrived in 2023, was paroled, and then was re-detained was entitled to a bond hearing under § 1226(a)); *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *11–12 (S.D.N.Y. Dec. 17, 2025) (stating that a noncitizen whose parole terminates "is not reverted by operation of law to status as an arriving alien" and that his re-detention "must be conducted under the discretionary framework of Section 1226(a)"). *But see*, *e.g.*, *Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *12–13 (W.D. Ky. Apr. 6, 2026); *Walang v. Acting Field Off. Dir.*, No. 1:26-cv-151, Doc. 8 at PageID 175 (S.D. Ohio Mar. 5, 2026).

The Court holds that Etienne is entitled to a constitutionally-adequate bond hearing under

§ 1226(a). He did not receive a constitutionally-adequate bond hearing on September 9, 2026 because the Immigration Judge simply found that he lacked jurisdiction without considering the merits of the bond request. (*See* Doc. 1-10 at PageID 61.)

**B. Due Process**

Etienne also alleges that the failure to provide him with a constitutionally-adequate bond hearing violates his due process rights. Noncitizens who "have passed through our gates and are . . . protected by the Fifth Amendment's Due Process Clause." *Lopez-Campos*, 175 F.4th at 732 (internal quotation and citation omitted). Respondents, nonetheless, argue that under Supreme Court precedent a noncitizen has "only those [due process] rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020). The Court has held that Etienne's detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by 8 U.S.C. § 1225(b)(2)(A), under which detention is mandatory.[5]

"Non-punitive detention in the immigration context violates the Due Process Clause, absent adequate procedural protections or a special justification outweighing a petitioner's liberty interest." *Ortiz Gutierrez v. Raycraft*, 821 F.Supp.3d 934, 940 (S.D. Ohio 2026) (cleaned up). As such, "detention [under § 1226(a)] is discretionary and constitutionally constrained by due process." *Id*. (citation omitted). The Court finds that Respondents are violating Etienne's due process rights by enforcing mandatory detention under § 1225(b). *See Munoz Soto*, 834

[5] Respondents place too much reliance on dicta from *Thuraissigiam*. The Supreme Court stated in dicta that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotations and citations omitted). But the issue in *Thuraissigiam* was whether 8 U.S.C. § 1252(e)(2) violated a noncitizen's due process rights by limiting judicial review of credible fear determinations. *Id.* at 140. The Supreme Court in *Thuraissigiam* also stated in dicta that "aliens who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107. *Thuraissigiam* is not dispositive on the due process issue before the Court.

F.Supp.3d at 771–72; *Montiel*, 2026 WL 32076, at *3; *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *6–7 (E.D. Mich. Oct. 29, 2025) (holding noncitizens who have been paroled into the United States are entitled to a bond hearing under the Due Process Clause). The Court turns then to the matter of what process is due to Etienne.

The three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), strongly supports Etienne's due process right to a bond hearing. As to the first factor—the private interest affected—Etienne's Fifth Amendment right to be free from deprivation of liberty is at stake. He has a significant liberty interest in avoiding detention, and especially detention indistinguishable from criminal incarceration. Etienne has a pending request for asylum, and Respondents created a liberty interest when they granted him parole. *See Azalyar v. Raycraft*, 814 F.Supp.3d 926, 933 (S.D. Ohio 2026). His detention without a bond hearing impinges on his liberty. As to the second factor, an individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Etienne poses a flight risk or danger to the community. That reduces the risk of erroneous deprivation of his right not to be deprived of liberty without due process. *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d 771, 785 (E.D. Mich. 2025), *aff'd* 175 F.4th 713 (2026). Finally, the last factor is neutral. The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harm to the community, but nothing in the record before this Court suggests that detention of Etienne is necessary to further the Government's interest. The Government has not shown that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.

In sum, the *Mathews* factors favor Etienne and compel the holding that mandatory detention without a constitutionally-adequate bond hearing violates his Fifth Amendment right to

due process. *See Mulet-Zaldivar*, 2026 WL 1911462, at *1–3; *Patel v. Tindall*, 810 F.Supp.3d 824, 833 (W.D. Ky. 2025) ("Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, the petitioner has a protected liberty interest in remaining out of custody.") (internal quotation and citation omitted); *Salgado Bustos*, 2025 WL 3022294, at *7.

## III. CONCLUSION

The Court has determined that Etienne did not receive a constitutionally-adequate bond hearing on September 9, 2026. Accordingly, the Habeas Petition (Doc. 1) is **GRANTED**.

The Court **ORDERS** that within seven days of the date of this Order, Respondents shall either (1) provide Etienne with a **due process compliant, individualized bond redetermination hearing** before an Immigration Judge; or (2) release Etienne from custody. If Respondents choose to provide a bond hearing in lieu of releasing Etienne from custody, then:

> (1) Respondents shall provide a copy of this Order to the Immigration Judge before any hearing;
>
> (2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;
>
> (3) the Immigration Judge **shall affirm and enforce** that Respondents bear the burden of persuasion to justify Etienne's continued detention and to adduce clear and convincing evidence that Etienne is a danger to the community or a risk of flight. *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024) (setting forth evidentiary standard), *cert. granted*, *Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026); *Soto-Medina v. Lynch*, 817 F.Supp.3d 612, 629 (W.D. Mich. 2026) (same); *Azalyar v. Raycraft*, 814 F.Supp.3d 926, 935 (S.D. Ohio 2026) (same); and

(4) the Immigration Judge **shall consider** whether less restrictive alternatives to detention can reasonably address Respondents' interest, as well as Etienne's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *6 (S.D.N.Y. Oct. 16, 2025); *see also Black*, 103 F.4th at 158.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge